Peter M.K. Frost
Western Environmental Law Center
1216 Lincoln Street
Eugene, Oregon 97401
(541) 485-2471
(541) 485-2457 (facsimile)
Internet e-mail address: frost@westernlaw.org
Oregon State Bar # 91184

Julia A. Olson
Wild Earth Advocates
Presidio Building 1004
P.O. Box 29921
San Francisco, California 94129
(415) 561-2222 x118
(415) 561-2228 (facsimile)
Internet e-mail address: jaoearth@aol.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# MEDFORD DIVISION

| | |
|---|---|
| RIVERHAWKS; NORTHWEST RAFTERS ASSOCIATION; KLAMATH-SISKIYOU WILDLANDS CENTER; <br><br> Plaintiffs, <br><br> v. <br><br> GILBERT ZEPEDA, District Ranger, Gold Beach Ranger District; ANN VENEMAN, Secretary, U.S. Department of Agriculture; U.S. FOREST SERVICE, <br><br> Defendants. | CV 01-3035-AA <br><br> COMPLAINT |

1. This lawsuit challenges actions of Defendants Gilbert Zepeda, et al. ("Forest Service") that violate federal law and fail to protect and enhance the Rogue Wild and Scenic River in Oregon. Specifically, the Forest Service issues special use permits and otherwise allows motorboat uses of the "wild" segment of the Rogue Wild and Scenic River that violate numerical limits, are at levels that harm the river's values, and are inconsistent with the segment's classification. Further, the Forest Service has violated procedural requirements of federal law in

Page 1 – Complaint

issuing such permits and in allowing motorboat uses. Moreover, the Forest Service has violated its duty to prepare a recreation plan for the river area. These and other agency actions identified herein have caused and continue to cause the degradation of the protected values of the Rogue Wild and Scenic River.

## Jurisdiction.

2. This lawsuit alleges violations of the Wild and Scenic Rivers Act, 16 U.S.C. §§ 1271 et seq., the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4331 et seq., the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 et seq., and the Administrative Procedures Act, 5 U.S.C. §§ 701 et seq. This Court has jurisdiction pursuant to 28 U.S.C. § 1331. This Court may issue declaratory relief pursuant to 28 U.S.C. § 2201, and this Court may issue injunctive relief pursuant to 28 U.S.C. § 2202, 5 U.S.C. § 705, and 5 U.S.C. § 706(1).

3. The Rogue Wild and Scenic River is located in Oregon, and agency actions challenged herein were made in Oregon. Venue is proper in this Court under 28 U.S.C. § 1391(e). Defendant Gilbert Zepeda resides officially in Curry County. Medford is the appropriate division for filing of this lawsuit. L.R. 3.4.

4. Reviewable final agency action exists that is subject to judicial review under 5 U.S.C. § 702 and 5 U.S.C. § 704. Any administrative appeal remedies have been exhausted. 7 U.S.C. § 6914(e). A present and actual controversy exists between the parties to this action. Plaintiffs may be entitled to attorneys fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

## Parties.

5. Plaintiff Riverhawks is a nonprofit public interest group with members throughout southern Oregon, and is dedicated to protecting and restoring Oregon's rivers and streams. Riverhawks focuses in part on the ecological and other damage caused by motorboat activities on the Rogue River. Riverhawks also works to increase public awareness and appreciation of the need to protect the outstandingly remarkable scenic, recreational, and natural values of the Rogue River for future generations. Riverhawks' members and their families live in and around the

Rogue River basin and adjacent lands, and they are adversely affected by the Forest Service's actions as described below.

6. Plaintiff Northwest Rafters Association was founded in 1982 and is a nonprofit organization of roughly 400 members, with chapters in Portland, Grants Pass, Klamath Falls, Roseburg, and Bend. Northwest Rafters strives to promote river safety, enhance education, increase awareness, share permits and trips, and to help clean-up and protect free-flowing rivers in the region. Many members of Northwest Rafters often visit and enjoy the Rogue Wild and Scenic River and adjacent lands, and they are harmed by the Forest Service's actions as described below.

7. Plaintiff Klamath-Siskiyou Wildlands Center is a nonprofit organization with approximately 700 members and offices in Williams and in Ashland. The Center is dedicated to protecting the unique biological diversity of the Klamath-Siskiyou bioregion of southern Oregon and northern California. The Center is actively engaged in river issues throughout southern Oregon and northern California. Many of the Center's members live near and use the Rogue Wild and Scenic River, and they are harmed as described below.

8. Plaintiffs bring this action on their own behalf and on behalf of their members who are adversely affected by the Forest Service's actions. Members of Plaintiffs use and enjoy and intend to continue to use and enjoy the Rogue Wild and Scenic River, and adjacent lands, for professional, aesthetic, and recreational purposes, including fishing, swimming, nonmotorized whitewater boating, camping, observing wildlife, and enjoying solitude. The Forest Service's violation of federal laws related to motorboat uses has and will continue to directly and adversely affect Plaintiffs and their members by, among other things: (1) degrading the character and values of the Rogue Wild and Scenic River; (2) increasing pollution, and degrading water quality; (3) harming fish and wildlife species, and (4) depriving Plaintiffs and their members of the right to be fully apprised of the environmental impacts of motorboat uses, and to participate effectively in agency decisions that allow such uses. None of the members of Plaintiffs has been compelled to participate in this lawsuit in any way.

9. Defendant Gilbert Zepeda is the District Ranger for the Gold Beach Ranger District, U.S. Forest Service. Mr. Zepeda is sued in his official capacity. Mr. Zepeda has signed documents authorizing motorboat uses on the Rogue Wild and Scenic River. Mr. Zepeda is responsible for making decisions and for failing to act as alleged herein.

10. Defendant Ann Veneman is the Secretary of the Department of Agriculture. Ms. Veneman is sued in her official capacity. Ms. Veneman is ultimately responsible to ensure that the Forest Service complies with all laws related to its administration and management of the Rogue Wild and Scenic River.

11. Defendant U.S. Forest Service is an agency of the Department of Agriculture. The Forest Service is the agency responsible for the administration and management of the Rogue Wild and Scenic River.

## Facts.

12. Congress enacted the Wild and Scenic Rivers Act ("WSRA") in 1968 to preserve certain selected rivers that possess outstandingly remarkable scenic, recreational, geologic, fish and wildlife, historic, cultural, or other similar values. Pursuant to WSRA, Congress established a classification system for designated rivers; required the agency that administers the river to establish boundaries defining a "river area" and to determine the river's "outstandingly remarkable values"; and required the administering agency to "protect and enhance" the river's values.

13. In 1968, Congress designated part of the Rogue River as one of the first eight rivers in the wild and scenic rivers system. The Rogue Wild and Scenic River is 84 miles long. The first segment, from the mouth of the Applegate River downstream to Marial, is approximately 47 miles long, and is administered by the Bureau of Land Management ("BLM"). The second segment, from Marial downstream to the Lobster Creek bridge, is approximately 37 miles long, and is administered by the Forest Service. Within the latter segment is a segment of the river, from Grave Creek downstream to Watson Creek, that is approximately 33 miles long, and is classified under WSRA as "wild." WSRA defines "wild" river areas as "free of impoundments

Page 4 – Complaint

and generally inaccessible except by trail, with watersheds or shorelines essentially primitive and waters unpolluted. These represent vestiges of primitive America." Within the "wild" segment, the Forest Service administers a 12-mile segment of the river from Blossom Bar downstream to Watson Creek. This case concerns Forest Service administration of that part of the Rogue Wild and Scenic River.

14. WSRA provides that the Forest Service must prepare a comprehensive management plan for the Rogue Wild and Scenic River. In 1972, the Forest Service and the BLM adopted a joint management plan ("river management plan") for the river area as a whole. The river management plan was not subject to an environmental analysis pursuant to NEPA. In 1989, the river management plan was incorporated, unchanged, into the Siskiyou National Forest Land and Resource Management Plan. The "outstandingly remarkable" values of the Rogue Wild and Scenic River include fisheries, wildlife, scenery, and recreation.

15. The river management plan states that the Forest Service shall manage the "wild" river area "to provide river-oriented recreation opportunities in a primitive setting," and "to preserve the river and its immediate environment in a natural, wild, and primitive condition essentially unaltered by the effects of man." The river management plan states that "[r]ecreation use of the Wild River Area will require a maximum degree of outdoor skills. The absence of man-made developments and the unmodified natural environment will dominate."

16. Related to boating, the river management plan states that the Forest Service shall "[f]avor nonmotorized use. Motorboat use from Watson Creek to Blossom Bar will be held to the use level consistent with that of 1968, the year of the Wild and Scenic Rivers Act."

17. In 1968, motorboat use of the Rogue Wild and Scenic River was regulated in part by the Oregon State Marine Board ("Marine Board") under a Memorandum of Understanding with the Forest Service and the BLM. After the Forest Service adopted the river management plan, the Marine Board and the Forest Service allowed motorboat use of the "wild" section of the Rogue Wild and Scenic River to increase substantially above 1968 levels. In 1979, the Forest Service

1 began to regulate motorboat use without the Marine Board's involvement. However, the Forest Service did not reduce motorboat use levels to those that existed in 1968.

18. In 1976, the Water Resources Research Institute at Oregon State University published a study of the number and type of motorboat trips upstream of Watson Creek in the Rogue Wild and Scenic River. The study included counts of private, commercial, and public agency motorboats. The study found that in 1968, a maximum of 60 commercial motorboats trips entered the "wild" segment of the Rogue Wild and Scenic River. The study found no reliable data on commercial motorboat use for the years 1969-1971. The study found that for the years 1972 to 1976, commercial motorboat use of the "wild" section of the Rogue Wild and Scenic River increased each successive year from 70, to 124, to 214, to 450, and to 600 trips. This commercial motorboat use of the "wild" segment of the Rogue Wild and Scenic River is in addition to private, Forest Service, and Curry County sheriff motorboat use of the segment.

19. Motorboat use of all types has continued to increase above the levels documented in the 1976 Water Resources Research Institute study. Motorboat use levels continue to exceed 1968 levels.

20. On January 31, 2000, the Forest Service issued three special use permits to two private entities to conduct commercial motorized tour boat operations in the Rogue Wild and Scenic River. The special use permits authorize 104-mile commercial motorized tour boat trips from Gold Beach upstream to the pool below Blossom Bar, within the "wild" section of the Rogue Wild and Scenic River. The special use permits authorize six commercial motorized tour boat trips daily into the "wild" section between May 1 to October 31 of each year, and five commercial motorized tour boat trips each week, not to exceed three trips in one day, between November 1 and April 30.

21. On January 31, 2000, the Forest Service issued four special use permits for commercial motorized boat use for fishing and transporting freight and people into the "wild" section of the Rogue Wild and Scenic River. The BLM also authorizes by permit and the Forest Service allows additional commercial motorboat uses of the "wild" section of the Rogue Wild and Scenic River.

The commercial motorboat use of the "wild" segment of the Rogue Wild and Scenic River authorized by all special use permits and other agency instruments is in addition to other private motorboat use and public agency motorboat use.

22. If during the winter/spring season every permit for motorboat access into the "wild" section of the Rogue Wild and Scenic River was used on the same day for one trip, there would be 49 trips taken. That figure does not include private motorboat use. The Forest Service does not require nor issue permits for private motorboat use in the "wild" section during the winter/spring season. During the summer/fall season, the Forest Service issues six permits daily for private motorboat use in the "wild" section. In addition, private landowners have unlimited motorboat access for ingress and egress to their properties within the "wild" section.

23. The size, engine power, speed, noise and passenger-capacity of commercial motorized tour boats that use the "wild" section of the Rogue Wild and Scenic River have all increased dramatically since 1968. Commercial motorized tour boats discharge pollution into the water and air from combustion engines. Further, a primary physical attribute of commercial motorized tour boat operations is the creation of a wake that can extend from river bank to river bank. The wake from motorized boats denudes or otherwise harms riparian vegetation, adversely impacts sand recruitment and retention, and harms fish and wildlife.

24. The northwestern pond turtle inhabits the Rogue Wild and Scenic River, including the "wild" section. The species inhabits slow moving parts of the river, including pools and shallow areas near riparian areas. The turtles often roost on rocks adjacent to the river bank. Hatchling turtles in particular roost on rocks, to avoid predators. The Northwestern pond turtle is a Forest Service "sensitive" species. "Sensitive" species are those that are not listed under the Endangered Species Act but for which concern exists about their viability. The Forest Service has failed to monitor the population of the northwestern pond turtle in the "wild" section of the Rogue Wild and Scenic River. The Forest Service has failed to ascertain the current base line population of the northwestern pond turtle in the "wild" section of the Rogue Wild and Scenic River. Commercial motorized tour boats harm the northwestern pond turtle by, among other

things, creating a wake that disrupts the species' roosting, feeding, and rearing behavior and needs.

25. The Chinook salmon inhabits the Rogue Wild and Scenic River, including the "wild" section. The "fall-run" of Chinook spawn in mainstem parts of the river, particularly during years of low water flows. The Chinook salmon is a Forest Service "sensitive" species. Commercial motorized tour boats and other motorboats harm Chinook salmon by, among other things, creating noise, a wake, turbulence, and other physical adverse impacts to spawning and rearing areas and species behavior. The Forest Service has failed to monitor Chinook salmon, and to respond to these adverse impacts from motorboats.

26. A major and recurring complaint of users of the Rogue Wild and Scenic River for angling, camping, solitude, nonmotorized boating and other pursuits is the presence and number of motorboats. The presence and number of motorboats threatens the safety of other users, degrades the aesthetic and other natural values of the river, decreases the amount and presence of wildlife, disrupts the quiet and natural sounds of the river, injects the unpleasant smell of combustion exhaust into an otherwise natural environment, and decreases the overall quality of the primitive river experience. The Forest Service has been aware of these conflicts for many years.

27. The river management plan provides that the Forest Service shall prepare a "recreation plan for the river area." No such plan exists for Forest Service-administered segments of the Rogue Wild and Scenic River.

Claims for Relief.

First Claim for Relief: Violation of the Wild and Scenic Rivers Act.

28. Plaintiffs reallege paragraphs 1 - 27.

29. WSRA section 10 requires the Forest Service to administer the Rogue Wild and Scenic River "in such a manner as to protect and enhance the values which caused it to be included" in the national wild scenic rivers system, and "[i]n such administration primary emphasis shall be given to protecting [the river's] aesthetic, scenic, historic, archaeologic, and scientific features."

16 U.S.C. § 1281(a). The Forest Service has violated its duty to protect and enhance the values of the Rogue Wild and Scenic River by authorizing motorboat uses that degrade wildlife, scenery, fisheries, and other natural values of the Rogue Wild and Scenic River. The Forest Service has violated its duty to give primary emphasis to the Rogue Wild and Scenic River's aesthetic, scenic, historic, archaeologic, and scientific features.

30. The river management plan requires the Forest Service to limit motorboat use to 1968 use levels on the "wild" segment of the Rogue Wild and Scenic River. The Forest Service has violated this enforceable standard in the plan and, as a result, has violated its duties to, among other things, protect and enhance the values of the river, and otherwise fully comply with WSRA.

31. WSRA requires that every river included in the wild and scenic rivers system shall be classified, designated, and administered as one of three classifications. 16 U.S.C. § 1274(b). The "wild" segment of the Rogue Wild and Scenic River must be administered as "free of impoundments and generally inaccessible except by trail, with watersheds or shorelines essentially primitive and waters unpolluted. These represent vestiges of primitive America." 16 U.S.C. § 1274(b)(1). The Forest Service's current allowance of motorboat uses in the "wild" segment of the Rogue Wild and Scenic River violates its duty to administer the segment as generally inaccessible except by trail and as essentially primitive with waters unpolluted.

32. The river management plan requires the Forest Service to prepare a recreation plan for segments of the Rogue Wild and Scenic River. The Forest Service has violated this enforceable standard in the plan and, as a result, has violated its duties to, among other things, protect and enhance the values of the river, and otherwise fully comply with WSRA.

## Second Claim for Relief: National Forest Management Act.

33. Plaintiffs reallege paragraphs 1 - 32.

34. The National Forest Management Act requires the Forest Service to ensure the viability of native and desired non-native vertebrate species. 16 U.S.C. § 1604(g)(3)(B); 36 C.F.R. § 219.19. The Forest Service's duty to ensure viable or self-sustaining populations of species applies with special force to "sensitive" species. The Forest Service has allowed motorboat use

Page 9 – Complaint

at times and at use levels that cause a violation of its duty to ensure the viability of the northwestern pond turtle and Chinook salmon as "sensitive" species.

### Third Claim for Relief: Violation of the National Environmental Policy Act.

35. Plaintiffs reallege paragraphs 1 - 34.

36. The issuance of the special use permits individually and collectively constitute major federal actions that may significantly affect the human environment. 42 U.S.C. § 4332(C). The Forest Service was required to prepare an environmental impact statement to analyze and disclose the impacts of the special use permits, and to fully involve the public in its decisionmaking. The Forest Service violated NEPA when it issued the special use permits without an environmental analysis under NEPA. The Forest Service violated NEPA when it issued the special use permits without preparing an environmental impact statement that analyzed the cumulative impacts of motorboat use on the Rogue River.

37. The Forest Service issued the special use permits by signing a decision memo and executing a categorical exclusion from NEPA. The agency cited Forest Service Handbook 1909.15(31.2) as the legal basis for its decision to exclude the special use permits from an environmental analysis. The decision memo and categorical exclusion are illegal under NEPA because the special use permits do not authorize the scope, impact, timing, longevity, or presence of wilderness areas, that may allow an activity to be categorically excluded from a NEPA analysis. The decision memo and categorical exclusion are illegal because the Forest Service violated its duties to perform public scoping on the proposed issuance of the special use permits.

38. The Forest Service has acted to allow motorboat uses of the "wild" section of the Rogue Wild and Scenic River without first analyzing all individual and cumulative impacts of such uses in an environmental analysis. The Forest Service has violated NEPA by failing to perform such analyses.

### Fourth Claim for Relief: Violation of the Administrative Procedures Act.

39. Plaintiffs reallege paragraphs 1 - 38.

40. The Forest Service's actions constitute reviewable final agency action that is arbitrary,

capricious, and not in accordance with law, and that is a reviewable failure to act. 5 U.S.C. § 706(2)(A); 5 U.S.C. § 551(13). The Forest Service's failure to act constitutes agency action unlawfully withheld and unreasonably delayed. 5 U.S.C. § 706(1).

Relief Requested.

Wherefore, Plaintiffs respectfully request that this Court grant the following relief:

1. Issue a declaratory judgment that the Forest Service has violated WSRA, NFMA, and NEPA as specified in the counts above;

2. Enjoin the Forest Service to prepare a recreation plan as required by the river management plan;

3. Enjoin the Forest Service to modify or otherwise alter special use permits, other instruments, and management policies to discontinue levels of motorized boat use in the "wild" section of the Rogue Wild and Scenic River that exceed levels that existed in 1968;

4. Award Riverhawks its costs and reasonable attorney fees, pursuant to 28 U.S.C. § 2412(d).

5. Grant such additional relief as this Court deems just and proper.

Dated: April 4, 2001.                    Respectfully submitted,


                                         _____
                                         Peter M.K. Frost
                                         Oregon State Bar # 91184
                                         541-485-2471


                                         _____
                                         Julia A. Olson
                                         Applicant for *Pro Hac Vice*
                                         415-561-2222 x 118

                                         Attorneys for Plaintiffs

Page 11 – Complaint